## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HESHAM ISMAIL | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 19-1093 |
| DOMINION ENERGY, INC. | : | |

### MEMORANDUM

**YOUNGE, J.**                                                    **APRIL 1, 2022**

This action arises out of the allegedly discriminatory actions on behalf of Plaintiff's former employer. Hesham Ismail ("Plaintiff") alleges that his former employer, Dominion Energy Fairless, LLC ("DEFLLC"), subjected him to discrimination based on his race, religion, and national origin. (*See generally*, Compl. ECF No. 1.) Plaintiff also alleges he was wrongfully denied contractually obligated funds for his employment-related relocation. Plaintiff filed his suit against Dominion Energy, Inc. ("Dominion"), DEFLLC's parent organization. However, he seeks leave to amend for the fourth time to include DEFLLC, three other related defendants, and two new theories of liability. Presently before this Court is Dominion's Motion to Dismiss Plaintiff's Third Amended Complaint, Plaintiff's Motion for Leave to Amend his Complaint, and Dominion's Motion for Sanctions pursuant to Fed.R.Civ.P. 11. For the reasons that follow, this Court grants Dominion's Motion to Dismiss, denies Plaintiff's Motion for Leave to Amend, and denies Dominion's Motion for Sanctions.

I.     **BACKGROUND**

A.     **Factual Background**[1]

Plaintiff is an Egyptian national of Arab descent. (ECF No. 10, ¶ 9.) He is Muslim. (*Id*.)
Plaintiff was hired by DEFLLC to work in a power plant located in Fairless Hills, PA, with the job
title of Engineer III. (*Id*. ¶ 8.)[2] When DEFLLC hired Plaintiff, it allegedly promised that his
relocation expenses would be paid for under the company's Relocation Benefit policy. (*Id*.)
Plaintiff relocated from Pottsville, PA to Morrisville, NJ in October 2015 in order to begin
employment. (*Id*.) Throughout his employment, Plaintiff's salary was suppressed by his managers,
and did not reflect the "outstanding quality of his performance." (*Id*. ¶ 15.)

On February 13, 2017, Plaintiff received his first annual performance review. (*Id*. ¶ 10.)
He received a score of "exceeded expectations." (*Id*.) Per Plaintiff's job offer, he was promised a
merit-based salary increase after his annual performance review. (*Id*. ¶ 11.) Upon receiving his
performance review score, Plaintiff asked his manager, William Mackenzie ("Mackenzie"), for his
salary to be adjusted based on the pay scale for the position. (*Id*. ¶ 13.) Mackenzie rebuffed Plaintiff
and threatened to call human resources. (*Id*. ¶ 14.) Later that day, Plaintiff's co-worker, a
Caucasian woman, received a promotion despite not meeting the minimum job qualifications. (*Id*.
¶ 15.)

On another occasion, Plaintiff approached Mackenzie and requested reimbursement for his
relocation expenses. (*Id*. ¶ 17.) Despite meeting the criteria, Mackenzie denied Plaintiff's claim.
(*Id*.) A few months later, a Caucasian co-worker was given the same relocation package that was

---

[1] Unless otherwise noted, the factual background is taken from Plaintiff's Complaint.
[2] As stated above, DEFLLC is a wholly owned subsidiary of Dominion. In 2018, DEFLLC transferred
ownership of the power plant to Starwood Energy Group Global, LLC, a private investment firm
unrelated to Dominion. (*Id*. ¶ 3.) DEFLLC "is now defunct and assetless, if not completely dissolved and
inactive." (*Id*.)

promise to Plaintiff. (*Id*. ¶ 18.) Plaintiff approached Mackenzie about the relocation package discrepancy, and Mackenzie stated that the human resources department was responsible for making reimbursement decisions. (*Id*. ¶ 19.) When Plaintiff asked Mackenzie to challenge the human resources department's decision, Mackenzie stated he was not going to honor the relocation policy because it was discretionary. (*Id*. ¶ 22.) Plaintiff continued to request assistance from his managers and other personnel at DEFLLC, to no avail. (*Id*.)

In April 2017, a minor oil leak occurred on a job where Plaintiff was staffed. (*Id*. ¶ 25.) When Plaintiff's manager became aware of the incident, he told Plaintiff, "I'd like to see how you get out of this one!" (*Id*. ¶ 26.) Mackenzie tried to have Plaintiff punished for the incident, even after an investigation into the incident revealed that the error was not Plaintiff's fault. (*Id*. ¶ 29.) When a more serious incident occurred on a job staffed with an engineer who was Caucasian, Mackenzie attempted to cover up the error and did not file a safety incident report. (*Id*. ¶ 24.)

In closed door meetings with Mackenzie, Plaintiff's manager would berate Plaintiff with racial, ethnic, and religious slurs. (*Id*. ¶ 29.) Plaintiff reported this conduct to Mackenzie's manager, Robert Sauer. (*Id*. ¶ 30.) Sauer ignored Plaintiff's complaints, and never took any action against Mackenzie. (*Id*. ¶ 31.)

## B.   Procedural Background

In November 2017, Plaintiff submitted an Intake Questionnaire to the Equal Employment Opportunity Commission ("EEOC") via mail in early November, 2017. (*Id*. ¶ 7.) The Philadelphia District Office received the questionnaire on November 16, 2017, and the Charge Receipt Technical Information Unit acknowledged receipt of Plaintiff's letter on November 30, 2017. (*Id*.)[3] Plaintiff did not hear back from the EEOC until October 30, 2018, when an EEOC Investigator

---

[3] Plaintiff's complaint was assigned a charge number of 846-2018-03677C. (*Id*. ¶ 7.)

from the Philadelphia office sent an email attaching a drafted charge for Plaintiff's review. (*Id.*) Plaintiff reviewed and finalized the document, then signed and returned it on November 7, 2018. (*Id.*) On the same date, the Pennsylvania Human Relations Commission ("PHRC") received a dual-filed version of the charge. (*Id.* ¶ 69.)

On January 29, 2019, the EEOC issued a Dismissal and Notice of Rights letter. (*Id.* ¶ 4.) The EEOC explained that it was unable to conclude that the information obtained established a violation of the statutes. (*Id.*)

On March 15, 2019, Plaintiff filed the instant suit, claiming, *inter alia*, race, religion, and national origin discrimination under Title VII. (ECF No. 1.) Plaintiff filed an Amended Complaint on June 10, 2019, (ECF No. 4), and a Second Amended Complaint on July 5, 2019. (ECF No. 5.) Pursuant to a stipulation between the parties, Plaintiff filed a Third Amended Complaint ("TAC") on September 3, 2019—a day later than the agreed-upon date. (ECF No. 10.) In his TAC, Plaintiff alleges the following against Dominion pursuant to Title VII: race discrimination (Count 1); national origin discrimination (Count 2); and religion discrimination (Count 3). (ECF No. 10, ¶¶ 36-44, 45-53, 54-62.) Plaintiff also alleges three corresponding counts of discrimination under the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA") (Counts 4 – 6). (*Id.*, ¶¶ 63-71, 72-80, 81-89.) He further alleges discrimination in his ability to make and enforce contracts pursuant to 42 U.S.C. § 1981. (Id. ¶¶ 90-97.)

In his TAC, Plaintiff further argues he is contractually entitled to relocation expenses pursuant to an internal policy at Dominion. Plaintiff alleges several claims sounding in breach of contract against Dominion exclusively: promissory estoppel (Count 8); breach of an express employment contract (Count 9); breach of an implied employment contract (Count 10); and breach

of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 260.1-260.45 ("WPCL") (Count 11). (*Id*. ¶¶ 90-97, 98-103, 104-106, 107-111, 112-115.)

On September 24, 2019, Dominion filed a Motion to Dismiss Plaintiff's Third Amended Complaint. (ECF No. 11.) In its Motion to Dismiss, Dominion argues that Plaintiff's claims should be dismissed not only because they are untimely, but because they are filed against the wrong party since Dominion never employed Plaintiff. (*Id*.) Plaintiff filed a response on October 8, 2019; thereafter Dominion filed a reply on October 15, 2019. (ECF No. 12, 14.)

On December 23, 2019, Plaintiff filed a Motion for Leave to Amend Complaint. (ECF No. 15.) Plaintiff attached as an exhibit a proposed Fourth Amended Complaint. (*Id*., Exhibit 1.) In his Fourth Amended Complaint, Plaintiff seeks to add as defendants DEFLLC (under the name "Fairless Energy L.C.C."), Mackenzie, Sauer, and NEI Global Relocation. (*Id*., Exhibit 1, p. 1.) Plaintiff also sets forth additional factual allegations, and two new claims—one for Title VII retaliation, and one for tortious interference with a contractual relationship. (*Id*., Exhibit 1, ¶¶ 59-65, 128-132.)

In response, Dominion filed an Opposition to Plaintiff's Motion for Leave to Amend Complaint on February 5, 2020. (ECF No. 17.) Dominion argues that Plaintiff unduly delayed adding the additional parties as well as the claims against them; that Plaintiff's proposed amendments are prejudicial to Dominion; and that Plaintiff's proposed amendments are futile. Plaintiff filed a reply on March 4, 2020. (ECF No. 19.)

On May 15, 2020, Dominion filed Motion for Sanctions, claiming Plaintiff was aware Dominion was not the proper defendant and his claims were untimely. (ECF No. 21.) Plaintiff filed an Opposition to Dominion's Motion for Sanctions. (ECF No. 23.)

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Rule 12(b)(6) provides for the dismissal of a complaint for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

In deciding a motion under Rule 12(b)(6), we may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer*, 605 F.3d at 230.  We must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 878–79 (3d Cir. 2018).  "However, 'we disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements.'"  *Id.* at 879 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).

Evaluation of a Rule 12(b)(6) motion entails a three-step analysis:  (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Connelly v. Lane Constr. Corp*., 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

The plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, when a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co*., 921 F.2d 484, 486 (3d Cir. 1990).

### B.       Leave to Amend under Rule 15(a)

Federal Rule of Civil Procedure 15(a) states that "leave [to amend a pleading] shall be freely given when justices so requires." Federal Rule of Civil Procedure 15(a) has been interpreted to liberally allow for the amendment of pleadings when justice so requires; however, this privilege is not unfettered. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under certain circumstances, the denial of a motion to amend is appropriate. *Adams v. Gould, Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "Delay becomes undue when it places an unwarranted burden on the court, or when the plaintiff has had previous opportunities to amend." *Cureton v. Nat'l Collegiate Athl. Assoc.*, 252 F.2d 267, 273 (3d Cir. 2001). In "assessing 'futility,' the district court applies the same standard of legal sufficiency" used in 12(b)(6) motions. *Id*. Accordingly, the court must "accept as true all the facts alleged in the complaint and all reasonable inferences that can be drawn from them," and deny a motion to amend only "where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

### C.      Rule 11 Sanctions

Federal Rule of Civil Procedure 11 requires that "[e]very pleading, written motion, and

other paper must be signed by at least one attorney of record in the attorney's name—or by a

party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). In doing so, the:

> attorney or unrepresented party certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances: (1) it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the
> claims, defenses, and other legal contentions are warranted by existing law or by a
> nonfrivolous argument for extending, modifying, or reversing existing law or for
> establishing new law; (3) the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after a reasonable
> opportunity for further investigation or discovery; and (4) the denials of factual
> contentions are warranted on the evidence or, if specifically so identified, are
> reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4). To satisfy the affirmative duty imposed by Rule 11, an attorney or

party must inquire into both the facts and the law before filing papers with the court. *Bus. Guides,*

*Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 545 (1991); *Napier v. Thirty or More*

*Unidentified Federal Agents*, 855 F.2d 1080, 1091 (3d Cir. 1988); *Gaiardo v. Ethyl Corp.*, 835

F.2d 479, 482 (3d Cir. 1987) (A plaintiff must "stop, think, investigate and research" before

initiating a lawsuit or filing a paper with the court). "The legal standard to be applied when

evaluating conduct allegedly violative of Rule 11 is reasonableness under the circumstances, with

reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged

paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods.,*

*Inc.*, 930 F.2d 277, 289 (3d Cir. 1991).

If a court determines that Rule 11(b) has been violated after notice and an opportunity to

respond, it "may impose an appropriate sanction on any attorney, law firm, or party that violated

the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). The plain language of Rule

11 indicates the discretionary nature of the decision to award sanctions in the form of attorneys'

fees and costs. *Id*. Rule 11 sanctions are intended to be used only in exceptional circumstances.

*Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988) (Rule 11

is violated only when it is patently clear that a claim has absolutely no chance of success).

## III.    Discussion

### A.    Dominion's Motion to Dismiss Plaintiff's Third Amended Complaint

#### 1.    The Parties' Arguments

Dominion argues this Court should dismiss Plaintiff's TAC for three reasons. (ECF No.

11.) First, Dominion argues the TAC was untimely, since Plaintiff failed to file his amended

complaint by the stipulated date. (*Id*. at 7.) Second, Dominion argues Plaintiff has failed to state

any facts that allege a plausible claim against it. Dominion points out that Plaintiff mentions it only

once, when Plaintiff avers that Dominion is the parent company of DEFLLC. (*Id*. at 7-9.) Nowhere

throughout the entirety of the TAC does Plaintiff aver sufficient facts to allege liability on behalf

of Dominion in its role as the parent organization of Plaintiff's actual employer. (*Id*. at 8.) Lastly,

assuming Plaintiff is even able to proceed with its claims, Dominion argues Plaintiff is unable to

plausibly state a claim in any capacity. (*Id*. at 9-28.)

In Plaintiff's allegations for race discrimination (Counts 1 and 4), Dominion argues

Plaintiff failed to exhaust his administrative remedies because he failed to indicate he was bringing

a race discrimination challenge, or allege any facts related to race discrimination in his complaint

before the EEOC or the PHRA. (*Id*. at 9-10, 17-18.) In Plaintiff's allegations for national origin

(Counts 2 and 5) and religion discrimination (Counts 3 and 6), Dominion argues Plaintiff fails to

state a claim under a disparate treatment theory or a hostile work environment theory. (*Id*. at 12-

17, 18-19.) Dominion claims Plaintiff does not set forth any circumstances which give rise to an

inference of discrimination, such as evidence that individuals outside his religion or national origin were treated more favorably. (*Id.* at 12-15, 18.)  Moreover, Plaintiff's only comparator evidence refers to race. (Id.) Dominion argues Plaintiff's only evidence in support of his hostile work environment claim is not "severe" in nature and is conclusory, and he does not plead he was detrimentally affected by his employer's actions. (*Id.* at 15-16, 18.)

Dominion also argues that Plaintiff's claims for discrimination under state and federal law (Counts 1-6) are untimely. (*Id.* at 9-10.) Dominion argues that since Plaintiff failed to dual file his charges with both the EEOC and the PHRA, he was required to file his charges with either agency within 180 days of the alleged discrimination. (*Id.*.) Dominion further asserts that since Plaintiff filed his charge with the EEOC in November 2017 and with the PHRA in November 2018, he did not dual file his charges. (*Id.*.) Since Plaintiff did not timely file his claims within 180 days with either the EEOC or PHRA, both are untimely. (*Id.*.)

Next, Dominion argues Plaintiff fails to state a claim under 42 U.S.C. § 1981 ("All persons within the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white persons."). (*Id.* at 19-20.) Plaintiff argues that based on the hostile work environment he experienced, Dominion interfered with his contractual rights as they are stated in Section 1981. (*Id.* at 19.) Dominion explains that an essential element of a claim under Section 1981 is the presence of a contract. (*Id.*.) Plaintiff has failed to plead any that he was in privity of contract with Dominion, who was not Plaintiff's employer. (*Id.*.) Since "a parent company is not liable for the actions of its subsidiaries unless the parent company itself has engaged in wrongdoing, or exercises control over the subsidiary entity," Dominion asserts it is not liable for any wrongdoing under Plaintiff's Section 1981 theory. (*Id.* at 20 (citing *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F.Supp.3d 538 (E.D. Pa. 2014).)

Dominion also claims Plaintiff's charges under state law contract claims—promissory estoppel (Count 8), breach of contract (Count 9), and breach of implied employment contract (Count 10)—are similarly inadequate. (Id. at 20-26). Dominion argues that since it was not Plaintiff's employer, it cannot be held liable for Plaintiff's relocation expenses because it was not in privity of contract with Plaintiff, nor was there any implied contract that existed between the parties. (*Id*. at 21 (citing *Matter of Estate of Barilla*, 369 Pa. Super. 213, 219 (1987) (stating that under Pennsylvania law, parties that are not in privity may not be held liable for a breach)).) Moreover, Dominion argues that Pennsylvania is an at-will state, and Plaintiff fails to allege the type of information necessary to rebut a presumption that he had an employment contract with his employer. (*Id*. at 23 (citing *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432 (3d Cir. 1986)).) Even though relocation has been selectively used as a factor in which to find an employment contract existed, Dominion claims the length of Plaintiff's tenure at DEFLLC proves he remained an at-will employee. (*Id*. at 24 (citing *Zysk v. FFE Minerals USA Inc.*, 225 F. Supp. 2d 482 (E.D. Pa. 2001) (employee's relocation was sufficient additional consideration, but because plaintiff was employed for two years, employee was no longer protected against discharge).)

Lastly, Dominion argues Plaintiff's claim under the WCPL must be dismissed. (*Id*. at 26-28.) Dominion points out that a prerequisite for relief under the WCPL is the existence of an employment contract, and Plaintiff has not alleged the existence of any contract for employment between himself and Dominion. (*Id*. at 26.) Dominion refutes any claim Plaintiff may assert that relocation benefits are "earned fringe benefits" under the WCPL since Plaintiff was clearly told by his supervisor that the relocation policy could be discontinued at any time because it was discretionary. (*Id*. at 27.)

In response, Plaintiff argues his delay in filing the TAC was de minimus as it was filed only a day late. (ECF No. 13, at 4.) Further, he argues he rightfully sued Dominion since DEFLLC is now a defunct and assetless organization. (*Id*. at 5.) Under Title VII, Plaintiff claims that "successors such as parent corporations assume liability for dissolved subsidiaries." (*Id*. (citing *Williams v. Greendolf, Inc.*, 735 F.Supp. 137, 140 (S.D.N.Y. 1990)). Plaintiff states that it would be inequitable to allow parent organizations to elude liability properly assigned to their affiliated entities; thus, he should be entitled to engage in discovery in order to uncover the extent of the entities' intermingled nature. (*Id*. at 6.)

Lastly, Plaintiff refutes certain arguments regarding the alleged deficiencies in his pleading, claiming generally that Dominion "attempts to hold Plaintiff's opening pleading to an unreasonable and unwarranted summary judgment level of detail and scrutiny." (*Id*. at 10.) He claims that Dominion's attacks on his hostile work environment and disparate treatment claims do not warrant dismissal with prejudice. (*Id*. at 9.) Further, Plaintiff claims Dominion improperly argues a factual question regarding the distance of his relocation, and that in general, courts have permitted complaints to proceed that allege WPCL claims under a relocation benefit theory. (*Id*.) Lastly, Plaintiff argues he is allowed to proceed with his PHRA claims despite lacking a dismissal letter, and that, despite Dominion's reading of the TAC, he does not seek punitive damages under the PHRA. (*Id*.)

### 2.     Plaintiff Fails to Plausibly State a Claim Against Dominion

As noted above, Plaintiff brings his discrimination and contractual claims solely against Dominion. However, Plaintiff does not succeed in stating a plausible claim against the sole defendant since Dominion never employed Plaintiff. Plaintiff fails to argue any alleviating factors that would allow him to ultimately hold Dominion responsible for DEFLLC's alleged liability.

Further, Plaintiff cannot plausibly aver his contractual claims because he never entered into an employment contract with Dominion.

Generally, a parent company may not be held liable for the actions of a subsidiary organization simply due to the fact the organizations are related. *See, e.g., United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *see also Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*, 2 F. Supp. 2d 688, 691 (E.D. Pa. 1998). A court may only disregard the corporate form in order to hold a parent company responsible by piercing the corporate veil. Piercing the corporate veil is appropriate "when a court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001). In order to pierce the corporate veil, specific factors must be considered before one entity may be held responsible for the misdeeds of another. Such factors include an entity's gross undercapitalization, failure to observe the corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds, nonfunctioning of directors and officers, the absence of corporate records, and in general, whether the corporation is merely a façade. *Id*. at 485. In short, "the evidence must show that the corporation's owners abused the legal separation of a corporation from its owners and used the corporation for illegitimate purposes." *Lozosky v. Keystone Bus. Prod., Inc.*, 2015 WL 4727073, at *4 (M.D. Pa. Aug. 10, 2015).

Courts have used a slightly different test in order to consider claims of corporate intermingling for labor purposes. The Third Circuit utilizes the "single employer" or "single integrated enterprise" test. In answering this question, the test looks at four factors: (1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership. Id. Among these factors, "no single factor is dispositive; rather, single

employer status under this test 'ultimately depends on all the circumstances of the case.'" *Pearson v. Component Technology Corp.*, 247 F.3d 471, 485–86 (3d Cir. 2001) (citation omitted). The heart of the inquiry is whether separate corporations are "in truth . . . but divisions or departments of a single enterprise" lacking the "arm's length relationship found among unintegrated companies." *N.L.R.B. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1112 (3d Cir. 1982).

Although veil-piercing is not a separate cause of action, but rather a basis for a cause of action against a particular entity, a court "must examine . . . whether the facts pleaded . . . state a cause of action on a theory of piercing the corporate veil." *Lumax Indus., Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995). "[A]verments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in Twombly, such averments cannot support a veil-piercing claim." *Cent. Transp., LLC v. Atlas Towing, Inc.*, 884 F.Supp.2d 207, 217 (E.D.Pa.2012) (quotations omitted).

Regardless of the exact factors examined by the court, the outcome is the same: Plaintiff fails to state a claim for discrimination under Title VII or the PHRA. Plaintiff is unable to set forth a plausible claim against Dominion since Dominion was not Plaintiff's employer. Plaintiff explicitly states that he was not at any point employed by Dominion, and had no employer/employee relationship with the organization. (TAC, ¶ 3 ("[Dominion] did not directly employ [Plaintiff]. A wholly-owned subsidiary of [Dominion], called [DEFLLC] operated the Fairless Power Station . . . for [Dominion] . . . and employed [Plaintiff] as an engineer at the power plant. At all times material hereto, DEFLLC qualified as Plaintiff's employer pursuant to [Title VII].").) Since Plaintiff had no employer/employee relationship with Dominion, none of the counts he alleges in his TAC include Dominion. Every single count alleged by Plaintiff complains of

some action undertaken by DEFLLC, and not Dominion. Clearly, Plaintiff's TAC is best read as an indictment of DEFLLC's behavior, rather than Dominion's. Plaintiff is unable to explain how DEFLLC's allegedly discriminatory actions equate to plausible claims levied against its parent organization.

Plaintiff further does not plead any facts alleging Dominion's liability in its role as DEFLLC's parent corporation. Plaintiff simply states that "upon information and belief, [Dominion] assumed legal responsible [sic] for any contingent liability for the employment discrimination claims of DEFLLC's employees, such as [Plaintiff]." (TAC ¶ 3.) Plaintiff's lone assertion fails to set forth the type of information necessary to plausibly claim that Dominion holds any responsibility for its subsidiary organization's actions. Plaintiff's threadbare statement does not provide any of the information that would be useful in determining that DEFLLC's misdeeds could fairly be attributed to some other entity. As explained above, such information would include the extent to which these entities shared resources, the presence of common management and ownership, and overlapping operations. Nothing in the TAC provides this Court with insight into the extent to which these entities acted as one.

Plaintiff's single justification for continuously including Dominion in its complaints is that it would be inequitable to let Dominion escape liability for the misdeeds of its subsidiary organization. However, Plaintiff does not give this Court the necessary information to even consider piercing the corporate veil in order to hold DEFLLC's parent organization liable. Courts do not undertake the process of reexamining corporate form lightly. Even read in the most favorable light possible, Plaintiff does not come close to providing the type of information necessary to consider bridging this divide. Plaintiff insinuates his reason for including Dominion in his suit is because DEFLLC is now assetless and defunct. (TAC ¶ 3.) However, claims under

Title VII and the PHRA require more than general solvency to consider holding a parent organization liable.

Plaintiff's remaining contractual claims are similarly baseless. Regardless if the alleged contract was express (Counts 7, 9, and 10) or implied (Count 8), Plaintiff asserts he was in privity of contract with DEFLLC, and not Dominion. It is axiomatic that under Pennsylvania law, "a contract cannot legally bind persons not party thereto." *Chambers Dev. Co. v. Commonwealth*, 474 A.2d 728, 731 (Pa. 1984). Only a party to a contract can be liable for breach of that contract. *McLaren v. AIG Domestic Claims, Inc.*, 853 F. Supp. 2d 499, 513 (E.D. Pa. 2012) (citing *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. 1991)). Any express or implied promise of a relocation benefit came from DEFLLC, and Plaintiff admits as much in his TAC. This fact precludes Plaintiff from asserting liability on behalf of Dominion, at least not without further information informing this Court as to why it should not observe these entities' corporate structures. Since Dominion was never a party to the various employment-related contracts which Plaintiff alleged entitles him to various types of remuneration, he is wholly unable to plausibly assert any type of contractual liability against Dominion.

## B.     Plaintiff's Motion for Leave to Amend Complaint

### 1.     Parties' Arguments

Plaintiff requests leave to amend his complaint a fourth time. (ECF No. 15.) In his proposed Fourth Amended Complaint ("FAC"), Plaintiff proposes adding four new defendants: DEFLLC,[4] NEI Global Relocation ("NEI"), Mackenzie, and Sauer. (ECF No. 15, Exhibit 1.) Plaintiff seeks to include DEFLLC in every charge brought against Dominion in his TAC. (*Id*.) In addition, he seeks to add Mackenzie, and Sauer to his count for Section 1981 discrimination. (*Id*. at p. 15)

---

[4] Plaintiff adds DEFLLC under the name of Fairless Energy, L.C.C., which he alleges is now the entity's name. (*Id*. at ¶ 4.)

Plaintiff also proposes adding NEI to his counts for breach of contract and breach of an implied employment contract. (*Id.* at p. 17, 18.)

Plaintiff also proposes adding two new counts: one for Title VII retaliation against defendants Dominion and DEFLLC, and another for tortious interference with a contractual relationship against NEI pursuant to 44 P.S. § 5524. (*Id.* at ¶¶ 59-65, 128-132.) In his count for retaliation, Plaintiff argues he was retaliated against for filing his charge of discrimination with the EEOC and that it was a motivating factor in Dominion's and DEFLLC's decision to subject him to adverse employment actions. (*Id.* at ¶¶ 59-65.) In his count for tortious interference with a contractual relationship, Plaintiff claims he was contractually owed a relocation benefit by Dominion and DEFLLC that NEI, acting as an agent of Plaintiff's employer and its parent entity, failed to fulfill. (*Id.* at ¶¶ 128-132.)[5]

In support of his Motion for Leave to Amend, Plaintiff argues that with the exception of adding DEFLLC, none of his other proposed changes present significant legal issues. (ECF No. 15.) Thus, he claims he should be allowed to amend his complaint under the court's liberal standard pursuant to Federal Rule of Civil Procedure 15. (*Id.* at 2.) In regards to his addition of DEFLLC as a defendant, he claims it is permitted despite the statute of limitations to bring a claim under Title VII having passed because DEFLLC knew or should have known that but for Plaintiff's mistake, it would have been named in the original complaint. (*Id.* at 3 (citing Fed. R. Civ. P. 15(c)(1)(C)(ii) ("An amendment relates back to the date of the original pleading when . . . the amendment changes the party . . . [and] the party to be brought in by the amendment . . . knew or should have known that the action could have been brought against it, but for a mistake concerning

---

[5] Plaintiff also adds a few new pieces of background information, including an alleged slur used by Mackenzie against Plaintiff. (*Id.* at ¶¶ 27.)

the proper party's identity.").) Plaintiff claims this is so because Dominion and DEFLLC allegedly share the same legal department and human resources department; thus, DEFLLC would have been aware of Plaintiff's claims. (*Id*. at 3.)

In response, Dominion argues Plaintiff's proposed amendments were unduly delayed, unduly prejudicial, and are mostly futile. (ECF No. 17 at 4-8, 8-11, 11-28.) Dominion argues Plaintiff's amendments are undue because he has had multiple opportunities to include DEFLLC as a defendant, yet has inexplicably failed to do so. (*Id*. at 6.) Dominion argues Plaintiff presents no reason at all for his delay, despite being made aware on multiple occasions that he had filed suit against the wrong party. (*Id*.) As for Plaintiff's other claims, Dominion argues Plaintiff sets forth no reason why they were not made in his other various amended complaints. (*Id*. at 7.)

Next, Dominion argues Plaintiff's amendments are unduly prejudicial because it has already spent time and resources crafting a motion to dismiss Plaintiff's TAC. (*Id*. at 8.) More so than that, Dominion argues it will be forced to spend time and resources reevaluating its best available defense. (*Id*. at 9.) Dominion also claims that the addition of several new parties will dramatically increase defense costs related to discovery. (*Id*. at 10.) In addition, Dominion claims that due to the passage of time, Mackenzie and Sauer have moved away from the area. (*Id*.) Since Plaintiff failed to include these parties in his various complaints, Dominion argues it is now asked to unfairly incur increased expenses related to this late addition. (*Id*.)

Dominion additionally claims that most of Plaintiff's proposed amendments are futile. It claims that for the same reasons as above, Plaintiff's claims for discrimination under Title VII and the PHRA are untimely asserted against DEFLLC because the new claims do not relate back to the date of the original complaint pursuant to Fed. R. Civ. P. 15(c)(1)(C)(ii). (*Id*. at 11-18.) Dominion argues that Plaintiff made a strategic decision to exclude DEFLLC, and thus it was not

on notice that but for Plaintiff's mistake a suit would be brought against it. (*Id*.) Dominion also claims Plaintiff failed to exhaust his administrative remedies alleging race discrimination against DEFLLC. (*Id*.)

Dominion further claims Plaintiff fails to state a claim under Section 1981 because he again fails to identify any contract which might apply, and fails to demonstrate the proposed defendants discriminated on any prohibited basis. (*Id*. at 21-24.) Dominion next asserts Plaintiff has failed to properly plead the elements of promissory estoppel against DEFLLC because the theory only applies to enforce a promise in where there has been no consideration. (*Id*. at 24-25.) It also argues Plaintiff fails to state a claim for breach of an implied employment contract against DEFLLC because Plaintiff is unable to rebut the strong presumption in Pennsylvania for at-will employment relationships. (*Id*. at 25-26.) Dominion acknowledges relocation expenses have occasionally functioned as additional consideration necessary to justify a court's finding of an employment contract, but distinguishes the present case by the fact that Plaintiff remained employed for several years after his hire. (*Id*. at 26.) Lastly, Dominion maintains relocation benefits are not earned fringe benefits as a matter of law under the WCPL, and thus an amendment adding any defendant under such a theory would be futile. (*Id*. at 27-28.)[6]

### 2.    Plaintiff is not Entitled to Leave to Amend his Complaint for the Fourth Time

This Court exercises its considerable discretion to deny Plaintiff's request for leave to amend his complaint for the fourth time. Plaintiff exhibited undue delay in failing to include the additional parties he now seeks to assert, and as a result, he is foreclosed from amending his

---

[6] Dominion also claims that, while it is a separate entity from NEI, the claim against it is futile under the gist of the action doctrine. (*Id*. at 28 (citing *Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491 (E.D. Pa. 2008) ("A tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it.").)

complaint again. Moreover, Plaintiff's amendments are futile since he made the deliberate decision to file suit against Dominion singularly.

As stated above, under Federal Rule of Civil Procedure 15, leave of court may be granted to a party in order to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The passage of time alone is insufficient to deny leave to amend. *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 573 F.2d 820, 823 (3d Cir. 1978). However, "delay becomes undue when it places an unwarranted burden on the court, or when the plaintiff has had previous opportunities to amend." *Cureton v. Nat'l Collegiate Athl. Assoc.*, 252 F.2d 267, 273 (3d Cir. 2001). The focus in examining undue delay is "on the movant's reasons for not amending sooner" and the burden it creates. *Id*. at 273*; see also Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988).

An amendment relates back to the date of the original pleading when "but for a mistake concerning the proper party's identity" the proper party "knew or should have known that the action would have been brought against it." Fed. R. Civ. P. 15(c)(1)(C)(ii). The Third Circuit has stated that the core of this inquiry is "what the prospective defendant knew or should have known after the initial pleading was filed." *Fetterman v. Westmoreland Cnty. Children's Bureau*, 681 Fed. App'x 166, 169 (3d Cir. 2017) (quotation omitted). Where a plaintiff "makes a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two," he will be barred from asserting a new claim. *Id*. However, where a plaintiff clearly indicates a misunderstanding as to the newly added defendant's role, the amended pleading

will be allowed to relate back to the date of the original pleading. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 556 (2010).

Plaintiff is not permitted to amend his complaint a fourth time because of his undue delay in including new parties and theories of liability in this suit. Plaintiff has been aware since its inception that DEFLLC was his employer, and not Dominion. However, Plaintiff continued to make the strategic decision to exclude DEFLLC from this suit, and is not allowed now to reverse course with no explanation. Plaintiff was informed early on that DEFLLC was his employer, and thus any employment-related suit was properly directed towards it, rather than Dominion.[7] In every permutation of his complaint, he even states that DEFLLC was not in fact his employer. Plaintiff sets forth no reason why he did not include DEFLLC (or Mackenzie, Sauer, and NEI) in any of his four previous complaints and gives this Court no insight regarding whether his decision (or dereliction) warrants leave to remedy. His decision to now attempt to recover from DEFLLC and its agents does not excuse him from his previous failures to include these parties. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) (rejecting proposed amended complaint where amendments could have been pled earlier). Rather, it highlights Plaintiff's knowledge of DEFLLC's role under the facts of this case, and his deliberate choice to pursue recovery from a different organization up until this point. Plaintiff had previous opportunities to reach the decision to pursue his claims against his employer. However, he failed to consider it or opted not to. Regardless, the ultimate outcome is his lengthy delay for which he gives no justification. As a result, his delay in bringing this suit against these parties is undue and leave to amend will not be permitted.

---

[7] Presumably, Plaintiff made the choice to include only Dominion because, as Plaintiff writes, DEFLLC is now a "defunct" and "assetless" organization. (TAC, ¶ 3.)

Similarly, Plaintiff cannot offer a reason why he now seeks to include several new theories of liability that were available to him during the numerous times he amended his complaint. Again, Plaintiff gives the Court no reason to consider for his failure to include additional Title VII and contractual claims. Given the number of amendments, this Court is particularly loathe to allow additional changes to Plaintiff's pleading, since parties are strongly encouraged to carefully consider their allegations (and the parties against whom they claim them) before filing. *See, e.g., Cureton v. NCAA*, 252 F.2d 267 (3d Cir. 2001).

Though he does not address his delay, Plaintiff asserts his request is nonetheless permissible because his proposed changes relate back to the date of his original complaint. He alleges DEFLLC knew or should have known of the pending lawsuit since Dominion and DEFLLC are intermingled. As his sole piece of evidence, Plaintiff claims the organizations share a legal department. However, Plaintiff's claims are futile. It is not clear that DEFLLC knew or should have known the action would have been brought against it. Rather, Plaintiff's actions indicate his clear intent to file suit against Dominion, rather than DEFLLC. Plaintiff clearly understood the differences between Dominion and DEFLLC. More so than that, Plaintiff's actions indicate a clear lack of any mistake in naming the parties against whom he has sought a determination of liability. Plaintiff attempts to clear this hurdle by indicating Dominion and DEFLLC share a common legal department, though this is hardly notable as the entities share a parent/subsidiary relationship. Having some overlap in enterprise operations is certainly to be expected. Plaintiff also indicates that through discovery, he hopes to prove the intermingled nature of the two organizations. However, discovery is not permitted to justify a litigant's belief or feeling. Since Plaintiff's claims do not relate back to the date of his original filing, they are futile and accordingly will not be allowed by this Court.

### C.        Dominion's Motion for Rule 11 Sanctions

Dominion argues Rule 11 sanctions are justified because Plaintiff's claims are frivolous. (ECF No. 21.) Dominion argues that after three amended complaints, Plaintiff has failed to state a single fact to support any plausible claim against Dominion since Dominion never entered in any employment-related contracts and "simply averring that [Dominion] is the parent company of DEFLLC is not enough to attribute DEFLLC's action to [Dominion]." (*Id*. at 16 (citing *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F.Supp.3d 538, 556 (E.D. Pa. 2014).) Further, Dominion reiterates Plaintiff's failure to timely file his claims or exhaust all administrative remedies. (*Id*. at 18-21.)

In response, Plaintiff alleges that sanctions are not warranted because he acted reasonably in only filing suit against Dominion. (ECF No. 23.) Plaintiff argues this is so because he plans on acquiring evidence through discovery that warrants veil-piercing. (*Id*. at 5.) Further, Plaintiff argues his allegations plausibly assert Dominion was also his employer under a joint employer or single employer theory. (*Id*. at 6-9.) In sum, Plaintiff claims sanctions are not warranted because they rest on valid factual and legal theories of liability. (*Id*. at 9.)

This court concludes Rule 11 sanctions are not warranted. The onus placed on Dominion following Plaintiff's numerous amended complaints simply does not rise to a level in which sanctions should be awarded. Nothing in Plaintiff's various complaints suggest they were filed for any dilatory reason. Further, Plaintiff's claims were sufficiently grounded in law and fact to not consider them frivolous for Rule 11 purposes. Though Plaintiff delayed in properly amending his complaint to bring his suit against his employer, there is no reason to think Plaintiff did this for any sanctionable reason. Rather than being frivolous, Plaintiff's claims are simply unjustifiable for the reasons explained above.

**IV.**     **CONCLUSION**

For the foregoing reasons, Dominion's Motion to Dismiss will be granted, Plaintiff's

Motion for Leave to Amend will be denied, and Dominion's Motion for Sanctions will be denied.


**BY THE COURT:**


_____

**Judge John Milton Younge**